UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

BOZENA GALAN-BLAIR,           :
    Plaintiff,              :
                            :     3:08-cv-295 (CFD)
    v.                      :
                            :
GERARD BUSILLO,               :
    Defendant.              :

# RULING ON MOTION FOR SUMMARY JUDGMENT

## I.  Introduction

This case arises out of a claim brought by the plaintiff, Bozena Galan-Blair, against the defendant, Officer Gerard Busillo of the New Haven Police Department. The plaintiff alleges that the defendant violated her civil rights and seeks damages pursuant to 42 U.S.C. § 1983. The defendant has moved for summary judgment.

## II.  Background[1]

The plaintiff is a middle school music teacher. On January 6, 2008, her purse was stolen, along with an uncashed paycheck in the amount of $1,463.48. She reported this theft to the New Haven Police Department. On January 17, she was notified by her employer that the State Street Check Cashing Store in New Haven had called to say that the plaintiff had cashed the check at the store, but the issuing bank had refused to honor the check. When the plaintiff called the store to inquire, she denied she had cashed the check. She was then asked to come to the store in

---

[1]Unless otherwise noted, these facts are taken from the parties' memoranda, exhibits, affidavits, and Local Rule 56 statements concerning the pending motion for summary judgment. They are undisputed unless otherwise noted.

-1-

person; she then left for the store.

Meanwhile, the employees of the check cashing store also called the police. The defendant police officer was dispatched to the store and told that a woman was in the store trying to cash a check that had already been cashed. When he arrived at the store, the defendant spoke with the store's owner and a store employee. They insisted that the plaintiff had cashed the check on January 7, which was later dishonored because of a "stop payment" request. The defendant was shown a photocopy of a photo identification card presented to the store on January 7, which matched the plaintiff. The store employee also accused the plaintiff of trying to cash the check again on January 17. The defendant was not aware that the store had previously called the plaintiff to come to the store.

The defendant asked the plaintiff to produce identification. She responded that she could not, because her driver's license was in her stolen purse, but the plaintiff identified herself by name.[2] The defendant escorted the plaintiff outside the store and directed her to wait in his police car while he investigated the situation. He did not tell her she was under arrest. The length of time that the defendant was required to wait in the police car is disputed, but appears to be somewhere between ten and twenty-five minutes.[3] She was not handcuffed, but claims that she was intimidated by the defendant and believed that she was under arrest. Upon further

---

[2]In her deposition, the plaintiff states that the defendant had a photocopy of her driver's license at this time. However, she admits in her Rule 56 Statement that she could not produce identification when the defendant asked her to do so. See Plaintiff's Local Rule 56(a)(2) Statement, ¶ ¶ 12.

[3] The defendant claims that the plaintiff spent just ten minutes in the car, while the plaintiff claims her wait lasted twenty to twenty-five minutes. The plaintiff also claims that the police officer was rude to her when he requested that she wait in the cruiser.

investigation, the defendant determined that the plaintiff had not visited the store on January 17 in an attempt to cash the check again and also verified that the plaintiff had previously reported her purse stolen, along with the paycheck and her driver's license. At that point, the defendant realized that he did not have enough information to charge the plaintiff with a crime and released her.

Plaintiff then brought this action under 42 U.S.C. § 1983, claiming false arrest and an unlawful police detention in violation of the Fourth Amendment to the U.S. Constitution.

### III. Applicable Law and Discussion

#### A. Motion for Summary Judgment Standard

In a summary judgment motion, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); White v. ABCO Eng'g Corp., 221 F.3d 293, 300 (2d Cir. 2000); Carlton v. Mystic Transp., Inc., 202 F.3d 129, 133 (2d Cir. 2000) (citing Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1223 (2d Cir. 1994)). Once the moving party has met its burden, in order to defeat the motion the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial," Anderson, 477 U.S. at 255, and present such evidence as would allow a jury to find in his favor. Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000).

In assessing the record, the trial court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought. Anderson, 477 U.S. at 255;

Graham, 230 F.3d at 38. "This remedy that precludes a trial is properly granted only when no rational finder of fact could find in favor of the non-moving party." Carlton, 202 F.3d at 134. Consistent with this standard, all evidence favorable to the nonmoving party must be credited if a reasonable jury could credit it. Evidence favorable to the moving party, on the other hand, must be disregarded unless a reasonable jury would have to credit it because it comes from a disinterested source and is uncontradicted and unimpeached. See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150-51 (2000). "When reasonable persons, applying the proper legal standards, could differ in their responses to the question" raised on the basis of the evidence presented, the question must be left to the jury. Sologub v. City of New York, 202 F.3d 175, 178 (2d Cir. 2000).

### B. Standard for Investigatory Stops

A police officer may stop a suspect without probable cause for an arrest if the officer has a reasonable suspicion that the suspect has committed, is committing, or is about to commit a crime. Such police conduct is described as an "investigatory stop" or a "Terry stop." See Terry v. Ohio, 392 U.S. 1 (1968). While "reasonable suspicion" does not have a precise definition, the standard requires an officer to have a "minimal level of objective justification." See United States v. Glover, 957 F.2d 1004, 1009 (2d Cir.1992). A court must consider the "totality of the circumstances" surrounding the stop, United States v. Sokolow, 490 U.S. 1, 8 (1989), and because the test is an objective one, the subjective motivations of the individual officer are not relevant to the analysis. Glover, 957 F.2d at 1009. The Second Circuit has announced several factors which help courts distinguish such investigatory stops from formal arrests, such as: the

amount of force used by police, the number of officers involved, the duration of the stop, whether handcuffs were used, whether the suspect was believed to be armed, the physical treatment of the suspect by police, and the extent to which the suspect's freedom of movement was restrained. United States v. Perea, 986 F.2d 633, 645 (2d Cir. 1993).

Investigatory stops are not subject to a fixed time limit, but instead are governed by "common sense and ordinary human experience . . . over rigid criteria." United States v. Sharpe, 470 U.S. 675, 685 (1985). However, a valid investigatory stop "must be temporary and last no longer than is necessary to effectuate the purpose of the stop." Florida v. Royer, 460 U.S. 491, 500 (1983). Similarly, the investigative methods must be the "least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time." Id., citing United States v. Brignoni-Ponce, 422 U.S. 873, 881-82 (1975).

Taking the evidence in the light most favorable to the plaintiff, the defendant and another officer[4] detained the plaintiff in a police car for twenty or twenty-five minutes, without handcuffs. This stop took place on a public street in New Haven during daylight hours. The plaintiff admits that she could not produce her identification when the defendant requested it, and also admits that the defendant did not know before conducting the investigatory stop that the plaintiff had been called to the store by the store employees. See Plaintiff's Local Rule 56(a)(2) Statement, ¶¶ 12, 19. Based on the information available to the defendant, the plaintiff was present at the check cashing store where a check in her name had been presented a week before.

---

[4]The plaintiff claims that a second officer responded to the scene and briefly questioned the plaintiff while the defendant was gathering initial information from the store owner and employee. The defendant claims that the second officer was merely on scene and did not question the plaintiff.

Store employees had accused her of committing a crime and the plaintiff was not able to produce identification. As such, reasonable suspicion existed to believe that the plaintiff had committed or planned to commit a crime, which justified further investigation. Drawing all factual inferences in favor of the plaintiff, there is no genuine issue of material fact as to the validity, nature, and duration of the initial Terry stop.

In addition, this valid investigatory stop did not rise to the level of an arrest. Under the totality of the circumstances, this case is factually consistent with previous cases where courts found a valid investigatory stop and not a full arrest. See, e.g. Dempsey, 749 F.Supp. at 1215 (entering summary judgment in favor of police officers and finding that an investigatory stop occurred where the suspects were detained for twenty minutes, handcuffed and searched at gunpoint, and ultimately transported to a crime scene for witness identification); Valdez v. City of East Hartford, 26 F. Supp. 2d 376 (D. Conn. 1998) (granting summary judgment in favor of police officers and finding a valid investigatory stop where a suspect was ordered out of his automobile at gunpoint and handcuffed, subjected to a search of his automobile, and detained for approximately six and one-half minutes); Chance v. Cundy, 2004 WL 2009282 (D. Conn. 2004) (granting summary judgment and finding a valid investigatory stop where one police officer requested that the suspect come to the police station for questioning, which lasted for twenty minutes). See also Amiri v. City of Sterling Heights, 2005 WL 1048755 at (E.D. Mich. 2005) (entering summary judgment and finding a valid investigatory stop where the plaintiff was placed in the backseat of a police car without handcuffs, told she was under arrest, detained there for between forty and sixty minutes, and ultimately released without being charged with a crime).

Looking to the Perea factors that help determine whether this stop at some point became a

formal arrest, see 986 F.2d at 645, several facts are particularly meaningful here. The defendant did not place the plaintiff in handcuffs, nor did he draw his firearm. In addition, it appears that only one or two officers were involved in the actual stop.[5] The plaintiff does not accuse the defendant of having any physical contact with her during the stop, which lasted for no more than twenty-five minutes. During this time, the plaintiff admits that the defendant verified that the plaintiff's paycheck and driver's license had been stolen, confirmed her identity, and determined that she had not come to the store in order to commit a crime. See Plaintiff's Local Rule 56(a)(2) Statement, ¶ ¶ 17-19. In all, the defendant had reasonable suspicion to conduct a Terry stop. During the stop, the defendant investigated the plaintiff's claims and freed her upon verifying that information. Furthermore, the amount of force used, the absence of any physical contact or handcuffs, and duration of the stop are consistent with a valid investigatory stop and not a formal arrest.

### C. Qualified Immunity Standard

Though summary judgment is appropriate on the ground that a valid Terry stop took place, it appears that even if he was not justified in making the initial stop, the defendant would be protected by qualified immunity. When government officers are sued in connection with a discretionary action, they are "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity

---

[5]The plaintiff claims that the second officer, who questioned her briefly before she was detained, told the defendant that she was innocent. See Plaintiff's Local Rule 56(a)(2) Statement, ¶ 11.

involves two inquiries: first, whether the officer's conduct violated the plaintiff's constitutional rights; and if so, second, whether that right was clearly established. See Saucier v. Katz, 533 U.S. 194, 201 (2001). These two questions, however, need not be addressed in rigid sequence. See Pearson v. Callahan, 129 S.Ct. 808, 818 (2009).

Even if the plaintiff's constitutional rights were clearly established, qualified immunity protects a police officer if it was "'objectively reasonable' for him to believe that his actions were lawful at the time of the challenged act." Lennon v. Miller, 66 F.3d 416, 420 (2d Cir. 1995), quoting Anderson v. Creighton, 483 U.S. 635, 641 (1987). Thus, if "officers of reasonable competence could disagree on whether . . . there was a reasonable suspicion" under Terry, then summary judgment in favor of the defendant on qualified immunity grounds is appropriate. Dempsey v. Town of Brighton, 749 F. Supp. 1215, 1227 (W.D.N.Y. 1990).

In this case, the plaintiff's underlying constitutional right of freedom from false arrest or unjustified Terry stops is obviously well-established. However, qualified immunity will protect the defendant if his decision to make the stop was objectively reasonable or if reasonable officers would differ on whether the undisputed facts of the case supported a stop. See Lennon, 66 F.3d at 420; Dempsey, 749 F.Supp. at 1227. The plaintiff claims that qualified immunity here is not appropriate because the defendant has not submitted affidavits from other police officers attesting to the reasonableness of his actions. However, the proper inquiry is whether it was objectively unreasonable for the defendant to believe that he was not violating the plaintiff's rights. See Robison v. Via, 821 F.2d 913, 921 (2d Cir. 1987). Based on the undisputed facts detailed above, as well as the pertinent decisions of the Supreme Court and Second Circuit, the defendant is also protected by the doctrine of qualified immunity as to the justification, duration,

and nature of the Terry stop.

IV.     **Conclusion**

For the reasons set forth above, the defendant's motion for summary judgment [Dkt. # 29] is GRANTED. The Clerk is directed to close the case.

SO ORDERED this  27th  day of July 2010, at Hartford, Connecticut.

 /s/ Christopher F. Droney

**CHRISTOPHER F. DRONEY**

**UNITED STATES DISTRICT JUDGE**